IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. WRIGHT, Jr., #R17719, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-00264-NJR |
| ) | |
| KIMBERLY S. BUTLER, ) | |
| MINH T. SCOTT, ) | |
| REBECCA A. COWAN, ) | |
| JASON N. HART, ) | |
| RANDY PFISTER, ) | |
| CHAD M. BROWN, ) | |
| ABERARDO A. SALINAS, ) | |
| SALVADOR A. GODINEZ, ) | |
| and LESLIE McCARTY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is now before the Court for consideration of the First Amended Complaint filed by Plaintiff James Wright. (Doc. 17). Plaintiff is currently confined at Pontiac Correctional Center ("Pontiac") (Doc. 9). He brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his First, Eighth, and Fourteenth Amendment rights at Pontiac and Menard Correctional Center ("Menard"). (Doc. 17).

Plaintiff claims that officials at both facilities unlawfully punished him for participation in a gang and/or unauthorized organizational activity. (Doc. 17, p. 7). He was initially given three months of segregation, but his punishment was increased to twelve months without any new charges or evidence. (Doc. 17, pp. 7-22). Plaintiff also was transferred from Menard to Pontiac to serve his punishment in disciplinary segregation there, and he describes the conditions

1

at Pontiac as atypical and harsh. *Id*. The decision to increase Plaintiff's punishment was ultimately overturned, but only after he served all twelve months in disciplinary segregation. *Id*.

In connection with these events, Plaintiff names the following individuals as defendants: Kimberly Butler (Menard's warden), Minh Scott (adjustment committee chairman), Rebecca Cowan (adjustment committee member), Jason Hart (adjustment committee member), Randy Pfister (Pontiac's former warden), Chad Brown (adjustment committee chair), Aberardo Salinas (adjustment committee member), Leslie McCarty (administrative review board ("ARB") member), and Salvador Godinez (Illinois Department of Corrections ("IDOC") Director). (Doc. 17, pp. 1-4). He brings claims against them for retaliation under the First Amendment, unconstitutional conditions of confinement under the Eighth Amendment, and due process violations under the Fourteenth Amendment.[1] (Doc. 17, pp. 7-22). Plaintiff seeks declaratory judgment, monetary damages, and indemnification by the State of Illinois. (Doc. 17, pp. 16, 22).

This case is now before the Court for preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

*Id*. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a

---

[1] Plaintiff also refers to due process violations under the Fifth Amendment. The Fourteenth Amendment, not the Fifth Amendment, applies to claims brought against state actors under § 1983. Therefore, Plaintiff's due process claim is analyzed under the Fourteenth Amendment.

2

claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The First Amended Complaint survives screening under this standard.

## **First Amended Complaint**

During his incarceration at Menard on April 22, 2014, Plaintiff was served with an inmate disciplinary report citing a violation of Rule 205 for participation in a security threat group or unauthorized organizational activity. (Doc. 17, p. 7). On April 24, 2014, he appeared before Menard's Adjustment Committee (including Minh Scott, Jason Hart, and Rebecca Cowan) and was found guilty of the rule violation. (Doc. 17, pp. 7, 18). Lieutenant Scott explained that the violation normally resulted in punishment with twelve months in disciplinary segregation. (Doc. 17, p. 8). The allegations against Plaintiff were vague, however, and therefore warranted only three months of disciplinary segregation, demotion to C-grade, commissary restriction, and visitation restriction. (Doc. 17, pp. 7-8).

After reviewing the findings, Warden Butler remanded the matter to the adjustment committee with instructions to increase Plaintiff's punishment to twelve months of disciplinary segregation, C-grade, and commissary restrictions. (Doc. 17, p. 8). Consistent with these instructions, the adjustment committee reissued Plaintiff a "duplicate" ticket and reheard the matter on May 14, 2014. (Doc. 17, pp. 8, 19). Without considering any additional charges or new

evidence, the adjustment committee increased Plaintiff's punishment to twelve months and ordered a disciplinary transfer to Pontiac. (Doc. 17, pp. 8, 19; Doc. 17-1, p. 15).

Prior to April 22, 2014, Plaintiff lived in Menard's general population and was interviewed several times by Menard's intelligence officers. (Doc. 17, p. 9). The officers questioned him about his involvement in a gang and threatened to punish him if they learned of any involvement. *Id*. Until he was issued the ticket on April 22, 2014, however, no charges were ever brought against Plaintiff. *Id*. He claims that the ticket represented the culmination of the intelligence officers' and Warden Butler's concerted efforts to level false charges against him. *Id*. Warden Butler allegedly "retaliated against Wright" by remanding the ticket for an upward adjustment of his punishment, simply because she was dissatisfied with the adjustment committee's lenient punishment. *Id*.

Plaintiff filed numerous grievances with Menard's grievance officer, prison grievance counselor,[2] and the ARB. (Doc. 17, p. 10). On October 20, 2014, Director Godinez and ARB Member McCarty reviewed the matter and found that the charges against Plaintiff were unsubstantiated. (Doc. 17, p. 10; Doc. 17-1, p. 18). Instead of dismissing the charges, however, they remanded the matter to the adjustment committee with instructions to have the reporting officer provide additional information to substantiate the charges. *Id*. At the time, Plaintiff had been confined in disciplinary segregation for three months beyond the sanction that was originally imposed. *Id*. Godinez and McCarty knew this, but they took no action to correct it. *Id*.

On November 30, 2014, Plaintiff filed an emergency grievance with Pontiac's warden, Randy Pfister, to complain about the delay of the hearing by Pontiac's adjustment committee.

---

[2] The grievance officer and counselor are not named as defendants (even in generic terms) in this action. All claims against these individuals are therefore considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

4

(Doc. 17, pp. 11-12). He requested immediate release from segregation. *Id*. Warden Pfister denied the grievance as a non-emergency and ignored letters Plaintiff wrote to him on December 3 and 14, 2017. *Id*.

Plaintiff received the rewritten disciplinary report on December 19, 2014. (Doc. 17, p. 12). It was substantially the same as the two prior reports that the ARB had deemed insufficient, dated April 22, 2014 and May 8, 2014. *Id*. On December 29, 2014, Plaintiff appeared before Pontiac's adjustment committee (comprised of Chad Brown and Aberardo Salinas). *Id*. He submitted a written statement pointing out that the latest disciplinary report suffered from the same deficiencies as all prior reports. *Id*. He asserted that his continued confinement in segregation was unlawful. *Id*.

At the time of the hearing, Plaintiff had been confined for almost six months beyond the original 3-month period of punishment imposed for the rule violation. (Doc. 17, p. 12). The adjustment committee nevertheless found him guilty once again and imposed punishment of twelve months in disciplinary segregation. *Id*. Warden Pfister upheld this decision. (Doc. 17, pp. 12-13).

Plaintiff was ultimately released from disciplinary segregation into administrative detention on April 24, 2015. (Doc. 17, p. 13). Just three days later on April 27, 2015, the ARB (comprised of Terri Anderson and Donald Stolworthy)[3] issued a final order, which concluded that the increase in punishment from three- to twelve- months in disciplinary segregation violated the Illinois Administrative Code. (Doc. 17, p. 14; Doc. 17-1, pp. 29-30). The ARB ordered Plaintiff's punishment to be retroactively reduced to three months. *Id*. This served as no relief to Plaintiff, who had already completed the full twelve-month term of punishment. *Id*.

---

[3] Neither individual is named as a defendant in this action, and all claims against Terri Anderson and Donald Stolworthy are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) *Myles*, 416 F.3d at 551-52.

Plaintiff now claims that his punishment with disciplinary segregation at Pontiac posed an "atypical and significant hardship," when compared to his time spent in the general prison population at Menard. (Doc. 17, p. 14). At Menard, Plaintiff had access to a job assignment, vocational classes, religious worship services, and educational programs. *Id*. He was allowed five contact visits per month, three showers per week, and daily telephone use. *Id*. He was allowed eight hours of recreation per week and regularly participated in interactive sports tournaments and recreational activities involving hundreds of inmates. *Id*.

At Pontiac, inmates in segregation are confined to their cells twenty-four hours per day. (Doc. 17, pp. 14-15). They are only allowed outside of their cell for two periods of recreation per week, one shower per week, and two visits per month. (Doc. 17, p. 15). Plaintiff was denied all telephone privileges and contact visits. *Id*.

He was essentially denied recreation outside of his cell as well. (Doc. 17, p. 15). Although technically allowed four hours of recreation per week, Plaintiff declined to attend, after being subjected to seriously mentally ill inmates who threw milk cartons full of urine and feces at one another from a 15' by 8' cage where they were confined during outdoor recreation. *Id*. After being hit with urine and feces, Plaintiff chose to forego outdoor recreation. *Id*. These same seriously mentally ill inmates screamed and beat on the cell walls at night, depriving Plaintiff of sleep. *Id*.

The cells were also infested with roaches, ants, and mice. (Doc. 17, p. 15). At one point, Plaintiff moved into a cell with feces smeared all over the doors and windows. *Id*. He was given a filthy mattress. *Id*. Plaintiff could only post fifteen family photos and could not use the prison commissary. *Id*. He also lost one or more teeth during this time period because he was unable to purchase and use dental loops or mouthwash. *Id*.

## **Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* First Amended Complaint into the following enumerated counts:

> **Count 1 -** First Amendment retaliation claim against the defendants for increasing Plaintiff's punishment for involvement in a security threat group from three months in disciplinary segregation, C-grade, and loss of privileges to twelve months and transferring him from Menard to Pontiac.
>
> **Count 2 -** Fourteenth Amendment claim against the defendants for depriving Plaintiff of a protected liberty interest without due process of law by increasing his punishment for involvement in a security threat group from three months to twelve months of disciplinary segregation without any new charges or evidence and delaying resolution of the matter until Plaintiff served all twelve months in segregation.
>
> **Count 3 -** Eighth Amendment claim against the defendants for subjecting Plaintiff to unconstitutional conditions of confinement in disciplinary segregation at Pontiac.

The parties and the Court will continue using these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merits. **Any claims not identified above but encompassed within the allegations of the First Amended Complaint should be considered dismissed without prejudice from this action.**

## Claim Subject to Further Review

## Count 2

To establish a violation of due process based on prolonged detention in segregation, a prisoner must demonstrate that the defendants deprived him of life, liberty, or property without due process of law. A liberty interest may arise when prison officials restrain the freedom of an inmate in a manner that "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). When making this determination, courts consider the combined import of the duration of the segregative confinement and the conditions endured. *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). Both the duration of Plaintiff's confinement in segregation and the conditions he endured at Pontiac suggest that a liberty interest was at stake, triggering the right to due process of law.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural protections that must be provided to a prisoner facing disciplinary proceedings that result in his confinement to disciplinary segregation. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. at 563-69; *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). The Supreme Court has also held that due process requires that the

findings of the disciplinary tribunal must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Plaintiff maintains that he was denied due process of law, based on the actions of all of the defendants between April 22, 2014 and April 24, 2015, because his additional punishment with twelve months in segregation was supported by no new charges or evidence. In other words, his punishment was arbitrarily increased by nine months and included a disciplinary transfer to Pontiac as a result of the actions of Butler, Scott, Hart, and Cowan at Menard, the actions of Pfister, Brown and Salinas at Pontiac, and the actions of Godinez and McCarty during the review process. In addition, the time that it took to resolve the matter in Plaintiff's favor exceeded the term of his prolonged punishment. Count 2 shall proceed against all of the defendants under the circumstances.

This claim is not without limitations. To the extent Plaintiff argues that his punishment ran afoul of the Illinois Administrative Code, he states no due process claim. An administrative code violation does not translate into a due process claim that is actionable under § 1983. A federal court does not enforce state laws and regulations. *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (1997) (en banc), *cert. denied*, 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. For. Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). In addition, no claim arises from Plaintiff's loss of privileges, such as telephone, visitation, and commissary privileges. A state inmate has no protected liberty interest in these privileges. *Smith v. Birkey*, 447 F. App'x 744, 746 (7th Cir. 2011); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Thomas v. Ramos*, 130 F.3d 754, 762 (7th Cir. 1997). Subject to these limitations, the Court will allow Count 2 to proceed against the defendants at this time.

## Claims Subject to Dismissal

### Count 1

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). To state a claim of retaliation, Plaintiff must demonstrate that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Plaintiff must set forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman*, 226 F.3d at 573 (citation omitted).

Plaintiff does not set forth a chronology of events which suggests that any particular defendant took action to retaliate against him for exercising his First Amendment rights. Instead, he alleges that Menard's intelligence officers worked with Warden Butler to level false charges against him. (Doc. 17, p. 13). However, Plaintiff does not name the intelligence officers as defendants or offer any reason why the warden was involved in bringing false charges against him. He also does not allege that his decision to participate in protected activity served as a motivating factor.

Plaintiff next alleges that Warden Butler retaliated against him by remanding his disciplinary matter to Menard's adjustment committee for an upward adjustment of his punishment, simply because the warden was dissatisfied with the adjustment committee's lenient punishment. (Doc. 17, p. 13). Here again, Plaintiff fails to allege that he engaged in protected activity or that Warden Butler's decision was motivated by Plaintiff's protected conduct.

He goes on to allege that the remaining defendants also retaliated against him by failing to adjust his punishment downward. (Doc. 17, p. 13). But Plaintiff offers no allegations suggesting that any of these defendants were motivated by his protected activity, such as his decision to file grievances or otherwise complain about the conditions of his confinement.

Plaintiff also alleges that the defendants refused to release him from segregation in order to prevent him from exhausting his administrative remedies and pursuing relief in court. (Doc. 17, p. 13). One problem with this assertion is that it is unsupported by any other allegations in the First Amended Complaint. Bald factual assertions and conclusory legal statements do not support a claim, even at this early stage. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Further, this claim is purely speculative.

The allegations in the First Amended Complaint fall short of stating a retaliation claim against any particular defendant. Therefore, Count 1 shall be dismissed at screening. However, this dismissal is without prejudice to Plaintiff re-pleading it in this or any other suit.

## Count 3

An Eighth Amendment claim for unconstitutional conditions of confinement consists of an objective and a subjective component. To satisfy the objective component, Plaintiff must demonstrate that he endured conditions that were "sufficiently serious" to constitute cruel and unusual punishment. This first element is satisfied when the plaintiff shows that he was "incarcerated under conditions posing a substantial risk of serious harm" to his health or safety. *Haywood v Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)). The allegations in the First Amended Complaint satisfy this first requirement for screening purposes.

However, this is not the end of the Court's analysis. To proceed with an Eighth Amendment claim based on unconstitutional conditions of confinement, allegations must also satisfy the subjective component of this claim. To do so, Plaintiff must show that the defendants responded with deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825 (1994). This occurs when a defendant knows of and disregards a substantial risk of serious harm to the inmate from those conditions. *Id*. The First Amended Complaint sets forth no allegations to this effect.

Although the defendants may have generally been aware of the conditions in segregation at Menard and Pontiac, Plaintiff does not allege that *any* of the defendants knew, generally or specifically, about the conditions that he endured. Plaintiff also does not allege that he notified any of the defendants about the conditions or asked anyone to address them. The First Amended Complaint also does not suggest that any particular defendant regularly made rounds in the area occupied by Plaintiff or witnessed the conditions he endured firsthand. The defendants' general awareness of Plaintiff's disciplinary transfer and his placement in disciplinary segregation does not support a claim of deliberate indifference against them. Count 3 shall therefore be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Pending Motion**

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

**Disposition**

IT IS HEREBY ORDERED that **COUNTS 1** and **3** do not survive screening and are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted against the defendants.

IT IS ORDERED that **COUNT 2** survives screening and is subject to further review against Defendants **KIMBERLY BUTLER, MINH SCOTT, REBECCA COWAN**, **JASON HART, RANDY PFISTER, CHAD BROWN, ABERARDO SALINAS, LESLIE McCARTY**, and **SALVADORE GODINEZ**.

As to **COUNT 2,** the Clerk of Court shall prepare for Defendants **KIMBERLY BUTLER, MINH SCOTT, REBECCA COWAN**, **JASON HART, RANDY PFISTER, CHAD BROWN, ABERARDO SALINAS, LESLIE McCARTY**, and **SALVADORE GODINEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 17), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the Motion for Recruitment of Counsel (Doc. 3), pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: November 17, 2017**

                                                  *s/ Nancy J. Rosenstengel*
                                                  **NANCY J. ROSENSTENGEL**
                                                  **United States District Judge**