IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. WRIGHT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-CV-00264-MAB |
| | ) |
| KIMBERLY BUTLER, ET AL., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Currently pending before the Court is the motion for summary judgment filed by Defendants (Doc. 63). Plaintiff James E. Wright filed a response in opposition to Defendants' motion for summary judgment (Doc. 71). The Court has considered the briefs and all of the evidence submitted by the parties and, for the reasons set forth below, the motion for summary judgment is **GRANTED**.

### BACKGROUND

Plaintiff is an inmate of the Illinois Department of Corrections ("IDOC"). While he was incarcerated at Menard Correctional Center ("Menard") and Pontiac Correctional Center ("Pontiac"), he alleges that Defendants Kimberly S. Butler, Minh T. Scott, Rebecca A. Cowen, Jason N. Hart, Randy Pfister, Chad M. Brown, Aberardo A. Salinas, Leslie McCarty, and Salvador A. Godinez violated his Fourteenth Amendment due process rights through a series of disciplinary reports and hearings stemming from his alleged involvement in gang-related activity at Menard in April 2014.

Prior to April 22, 2014, Plaintiff was housed in Menard's general population and was interviewed several times by Menard intelligence officers for suspected involvement in the Gangster Disciples, a gang, at the prison (Doc. 18, p. 4). On April 22, 2014, Plaintiff received a disciplinary report citing him for Offense 205—Security Threat Group ("STG") or Unauthorized Organizational Activity (Doc. 63-1). Officer Ryne Ellett drafted this April 22, 2014 report, which summarized the conclusion of an investigation concerning Gangster Disciples STG leadership at Menard (Doc. 63-1). The report provides that the investigation began on March 15, 2014 after officials received information from a confidential source, who identified Plaintiff as a Gangster Disciple affiliate and Unit Coordinator for the Gangster Disciples on the odd side of the West Cell House at Menard (Doc. 63-1). According to this report, a copy was given to Plaintiff on April 22, 2014 (Doc. 63-1).

Plaintiff attended a hearing before the prison disciplinary body, the Adjustment Committee, on April 24, 2014. The committee included Defendants Scott and Hart (Doc. 63-2). At the hearing, Plaintiff pled not guilty to the charges and stated that the charges brought against him were not true (Doc. 63-2). That day, Defendants Hart and Scott recommended that Plaintiff be disciplined with the following: 1) three months C Grade; 2) three months in segregation; 3) three months commissary restriction; and 4) six months contact visits restriction (Doc. 63-2). Plaintiff contends that the allegations against him were vague and what would normally constitute a twelve-month disciplinary segregation only resulted in a three-month segregation because the report was not more detailed (Doc. 18, p. 3). After review of the report, the Adjustment Committee's

recommendations were remanded (Doc. 63-2). This remand was at the direction of Defendant, Warden Butler (Doc. 18, p. 3; Doc 46, p. 10).

On May 8, 2014, the disciplinary report was re-written and served on Plaintiff (Doc. 63-3). Plaintiff contends this disciplinary report was duplicative as he was cited for the same offense (Offense 205—Unauthorized STG Activity) (Doc. 18, p. 3); however, Defendants assert the report included new information, including that Plaintiff was a Unit Coordinator for the even side of Menard's West Cell House (not the odd side, as included in the April 22 disciplinary report) and that there were numerous STG related incidents involving the Gangster Disciplines in Plaintiff's area where he was Unit Coordinator (Doc. 63-3). A hearing was held for this report on May 14, 2014, where the Adjustment Committee decided that Plaintiff would receive the following punishment: 1) one-year C Grade; 2) one-year segregation; 3) a disciplinary transfer to Pontiac; 4) one-year commissary restriction; and 5) six months contact visits restriction (Doc. 63-4).

In August 2014, Plaintiff filed a grievance appeal regarding the May 2014 disciplinary decision. On October 20, 2014, Defendants Godinez and McCarty responded to the grievance appeal (Doc. 63-5). In their letter, they recommended remanding the disciplinary report back to the Reporting Officer at Menard to provide additional information as to how Plaintiff was identified as an active participant in STG activity (Doc. 63-5). Also in this letter, the Administrative Review Board ("ARB") directed Menard officials to rewrite the disciplinary report and then forward the required report to Pontiac for it to be re-served on Plaintiff and re-heard in a disciplinary hearing (Doc. 63-5).

On November 30, 2014, Plaintiff filed an emergency grievance with Pontiac's Warden, Mr. Randy Pfister, to complain about the delay of the hearing by Pontiac's Adjustment Committee and to ask for immediate release from segregation (Doc. 18, pp. 4-5). Warden Pfister denied the grievance as a non-emergency. *Id.* Plaintiff wrote two letters to Warden Pfister about this issue on both December 3 and 14, 2014, but did not receive a response (Doc. 18, p. 5).

On December 17, 2014, the disciplinary report was again re-written (this time by Officer Runge) and was served on Plaintiff on December 19, 2014 (Doc. 63-6). The December 17, 2014 disciplinary report explained the position of Unit Coordinator itself and stated that officers received reliable information provided by three confidential sources as to Plaintiff's involvement in STG activity (Doc. 63-6).  Plaintiff contends this report was substantially the same as the two prior reports that the ARB deemed insufficient, dated April 2014 and May 2014 (Doc. 18, p. 5).

A hearing on this new December 2014 report was held on December 29, 2014 at Pontiac (Doc. 63-7). Plaintiff continued to dispute his involvement in gang activity and submitted a written statement outlining that this report suffered from the same deficiencies as the prior reports (Doc. 63-8; Doc 18, p. 5). Defendants Brown and Salinas were the Adjustment Committee members for the December 29, 2014 hearing (Doc. 63-7). At this hearing, Plaintiff received the following punishment, approved by Warden Pfister: 1) one-year C Grade; 2) one-year segregation; 3) disciplinary transfer; 4) one-year commissary restriction; and 5) six months contact visits restriction (Doc. 63-7). At the time

of the hearing, Plaintiff had been in disciplinary segregation for almost six months beyond his original three-month period of punishment (Doc. 18, p. 5).

On or around April 22, 2015, Plaintiff was released from disciplinary segregation into administrative detention (Doc. 63-9). Approximately five days later, on April 27, 2015, Terri Anderson of the ARB provided a report finalizing the October 20, 2014 correspondence (Doc. 63-10). The ARB found that it was reasonably satisfied that Plaintiff committed the offense and recommended that his grievance be denied. In addition, it directed that Plaintiff's discipline be reduced to three months C Grade, three months Segregation, three months Commissary Restriction, and six months contact visit restriction because Department Rule 504. 90 (Ill. Admin. Code 20 § 504.90) had not been followed (Doc. 63-10). In addition, the report called for Plaintiff's Disciplinary Card to be corrected to accurately reflect the charges and correct punishment (Doc. 63-10).

Plaintiff filed his original complaint on March 14, 2017 (Doc. 1) and an amended complaint on November 13, 2017, in which Plaintiff brought three separate claims against Defendants (Doc. 17). Plaintiff alleged the following: 1) a First Amendment retaliation claim against defendants for increasing Plaintiff's punishment for involvement in a security threat group from three months in disciplinary segregation, C-grade, and loss of privileges to twelve months and transferring him from Menard to Pontiac; 2) a Fourteenth Amendment claim against the defendants for depriving Plaintiff of a protected liberty interest without due process of law by increasing his punishment for involvement in a security threat group from three months to twelve months of disciplinary segregation without any new charges or evidence and delaying resolution of the matter until Plaintiff

served all twelve months in segregation; and 3) an Eighth Amendment claim against the defendants for subjecting Plaintiff to unconstitutional conditions of confinement in disciplinary segregation at Pontiac (Doc. 18, p. 7).   After the Court's threshold review pursuant to 28 U.S.C. § 1915A, Plaintiff was able to proceed on count two, the Fourteenth Amendment claim against all Defendants (Doc. 18, p. 9).

Defendants filed their answer on February 23, 2018 (Doc. 46) and Plaintiff was appointed counsel on November 16, 2018 (Doc. 54). Defendants filed their motion for summary judgment on March 15, 2019 with Plaintiff filing his response in opposition on May 10, 2019 (Doc. 71). No reply briefs were filed.

## LEGAL STANDARD

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary Judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A "material fact" is one identified by the substantive law as affecting the outcome of the suit. A "genuine issue" exists with respect to any such material fact…when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party.

*Bunn v. Khoury Enterprises, Inc.*,753 F.3d 676, 681 (7th Cir. 2014) (citations omitted).

## DISCUSSION

Defendants advanced three arguments in their motion for summary judgment: 1) Defendants Butler, Godinez, Hart, and McCarty are entitled to summary judgment because they lack the sufficient personal involvement with Plaintiff's claims to be held liable; 2) Plaintiff received constitutionally adequate due process protections; and 3) Defendants are entitled to qualified immunity. In his response, Plaintiff argued that factual issues still exist regarding the substance of the series of discipline decisions that resulted in Plaintiff being placed in segregation for one year. As Defendants' second argument is dispositive of the case as a whole, the Court will address that argument first.

### I.   Defendants claim Plaintiff received constitutionally adequate due process protections

Prisoners have a right "to be free from arbitrary actions of prison officials." *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). Under the Fourteenth Amendment, state and local governments cannot deprive "any person of life, liberty, or property, without due process of law," including prisoners, as "there is no iron curtain drawn between the Constitution and the prisons of this country." *Scruggs v. Jordan,* 485 F.3d 934, 938 (7th Cir. 2007) (citing *Wolff v. McDonnell,* 418 U.S. 539, 555-56 (1974)). A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest with which the state has interfered; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs,* 485 F.3d at 939 (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

By nature of being incarcerated, prisoners' protected liberty interests are limited to freedom from restraints that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). It follows that "an inmate's liberty interest in avoiding segregation is [also] limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). There is no constitutional right to remain in the general population, but, for a prisoner sent to segregation, "both the duration and the conditions of segregation must be considered in determining whether due process is implicated." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). In order to determine if a plaintiff endured such a hardship, the court must look to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway*, 734 F.3d at 743 (quoting *Marion*, 559 F.3d at 697-98).

Plaintiff advanced facts in his Amended Complaint related to the conditions of his segregation (Doc. 18, p. 6). Defendants assumed, for purposes of their motion for summary judgment, that Plaintiff's time in segregation implicated a protected liberty interest (*see* Doc. 63, p.8). The Court will likewise assume as much and need not address whether a liberty interest was implicated here. Rather, the question is whether the procedures followed during the Adjustment Committee hearings were constitutionally deficient as Plaintiff alleges.

The procedural protections outlined in *Wolff* provide safeguards against arbitrary actions by correctional facility staff. Due process in a prison disciplinary proceeding requires three key components: (1) advanced written notice of the disciplinary charge; (2)

the opportunity to call witnesses and present evidence; and (3) a written statement by the fact-finders of their decision that includes the evidence relied upon and the basis for their decision. *Lucas v. Montgomery*, 583 F.3d 1028, 1030 (7th Cir. 2009) (citing *Wolff*, 418 U.S. at 563-66). In addition, procedural due process requires that the findings of the disciplinary tribunal must be supported by *some* evidence in the record. *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs*, 485 F.3d at 941. Once the court has determined that the evidence is reliable, the inquiry ends, and the court should not look further to see whether other evidence in the record may have suggested an opposite conclusion. *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989).[1]

Due process requires that an inmate subject to disciplinary action be provided "a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Forbes*, 976 F.2d 308, 318 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 564-65). Written statements need only include the evidentiary basis and reasoning behind the decision in order to ensure both administrative accountability and meaningful review. *Scruggs*, 485 F. 3d at 941 (citing *Chavis v. Rowe*, 643 F.2d 1281, 1287 (7th Cir. 1981); *Forbes*, 976 F.2d at 318; *Saenz v. Young*, 811 F.2d 1172, 1173-74 (7th Cir. 1987)). To determine

---

[1] In due process cases, where evidence is at the core of the argument, courts have repeatedly held that the evidence required by internal disciplinary boards to administer punishments is not expansive. For example, procedural due process requires prison disciplinary officials to disclose material exculpatory evidence to the charged offenders. *Scruggs,* 485 F.3d at 939 (citing *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003)). But officials are not required to allow the presentation of evidence that could threaten institutional safety or correctional goals. *Scruggs*, 485 F.3d at 940 (citing *Piggie*, 344 F.3d at 677) (citing *Wolff*, 418 U.S. at 566).

whether the written statements are constitutionally sufficient, the Seventh Circuit has repeatedly held that written statements including only the evidence relied on to make the decision as appropriate to meet this standard. *Saenz*, 811 F.2d at 1173-74 (upholding as conditional a short discipline report that included only the reporting officer's eye-witness account). A mere conclusion that the prisoner is guilty is not constitutional, though. *Saenz,* 811 F. 2d at 1174 (citing *Hayes v. Thompson,* 637 F.2d 483, 492 (7th Cir.1980); *Chavis,* 643 F.2d at 1283, 1287, 1289; *Redding v. Fairman,* 717 F.2d 1105, 1114–15 (7th Cir.1983); *Akbar v. Fairman,* 788 F.2d 1273, 1275–76 (7th Cir.1986)).

Here, Defendants argue that Plaintiff was afforded all due process protections throughout the course of his punishment at both Menard and Pontiac. In total, Plaintiff attended three hearings related to his alleged discipline infraction. Each time, he was given 24 hours advanced notice in writing of the charges against him, albeit those charges were the same each time (Doc. 63 at 9). Each hearing, Plaintiff had the opportunity to provide his own defense either in-person or through written statements (Doc. 63 at 9). After each hearing, Plaintiff was provided with written statements outlining the basis for the discipline decision and the evidence the Adjustment Committee relied on to make those decisions (Doc. 63, p. 9). In each disciplinary report, even though there is overlap between the three, officials relied on more evidence than just an eye-witness account, which the Seventh Circuit has held is constitutional (*see Saenz*, 811 F.2d at 1173-74).

At the heart of Plaintiff's argument is that throughout the year-long discipline process, during which he was in disciplinary segregation, officials at both Menard and Pontiac relied on the same or similar evidence to determine different punishments of

varying lengths at his three discipline hearings. Plaintiff contests the factual allegations that the Adjustment Committee relied on to make their decisions and asserts that a jury must determine whether Mr. Wright had been involved in gang activity as either a member or leader (Doc. 71 at 3). Yet, he does not outline *specific facts* that are still at issue nor does he advance precedent to support his argument that he was not afforded due process protections over the course of the year he spent in segregation. Constitutional due process does not require that the evidence relied upon preclude any conclusion but the one reached by the disciplinary board; rather, all it requires is that there is *some* evidence in the record to support the disciplinary board's findings. *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987) (citing *Hill*, 472 U.S. at 457). That is precisely the case here; there is sufficient evidence in the record to support the findings and the evidence demonstrates that Plaintiff received all the process he was due. Accordingly, Defendants are entitled to summary judgment.

> II. **Defendants move for summary judgment on the basis of qualified immunity and partial summary judgment on the basis that four Defendants lack sufficient personal involvement with Plaintiff's claims to be held liable**

The Court has already determined Defendants are entitled to summary judgment on Plaintiff's due process claim because he received all process due to him. Therefore, the Court need not analyze or reach a determination as to the issues of personal knowledge of four Defendants and qualified immunity for all Defendants.

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (Doc. 73) is **GRANTED** and this action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of all Defendants and against Plaintiff and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:   May 13, 2020**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**